IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

KENNETH WAYNE LEWIS                                                                      PLAINTIFF

v.                               Civil No. 13-2158

CAROLYN W. COLVIN,[1] Commissioner
Social Security Administration                                                           DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Kenneth Wayne Lewis, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.     Procedural Background**

Plaintiff applied for DIB on March 30, 2011. (Tr. 12.) Plaintiff alleged an onset date of January 31, 2011 due to spine/back impairments, specifically "degeneration of spine," two herniated discs, and two missing spinal discs. (Tr. 12, 161.) Plaintiff's applications were denied initially and on reconsideration. Plaintiff requested an administrative hearing, which was held on April 10, 2012 in front of Administrative Law Judge ("ALJ") Glenn A. Neel. Plaintiff was present to testify and was represented by counsel. The ALJ also heard testimony from Vocational Expert ("VE") Jim Spragins. (Tr. 25.)

At the time of the administrative hearing, Plaintiff was 58 years old, and possessed a high school diploma with additional training from his past employer, Arkansas Oklahoma Gas Corporation. (Tr.

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

32.).The Plaintiff had past relevant work experience ("PRW") of gas-leak inspector and pipeline construction inspector. (Tr. 19.)

On August 9, 2012, the ALJ concluded that Plaintiff suffered from the following severe impairments: degenerative disc and joint disease of the lumbar spine. (Tr. 14.) The ALJ found that Plaintiff maintained the residual functional capacity to perform light work, except he can only occasionally balance, stoop, kneel, crouch, crawl, and climb. (Tr. 16.) With the assistance of the VE, the ALJ determined that the Plaintiff could perform his past relevant work. (Tr. 19.)

Plaintiff requested a review by the Appeals Council on August 15, 2012. (Tr. 6.) The Appeals Council declined review on May 20, 2013. (Tr. 1.) Plaintiff filed this appeal on June 24, 2013. (ECF. No. 1.) Both parties have filed appeal briefs, and the case is now ready for decision. (ECF Nos. 12, 15.)

## II. Applicable Law

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and

that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion

Plaintiff raises four issues on appeal: 1) the ALJ erred in the weight given to treating physician Dr. Jackson's Physical RFC opinion; 2) the ALJ erred as to the Overall RFC determination; 3) the ALJ erred as to his Step 4 Analysis; and 4) the ALJ failed to fully develop the record as to Plaintiff's physical therapy attendance.(Pl.'s Br. at 7-17.) Because this Court finds several issues require a remand, all of Plainitff's issues will not be addressed.

#### A. Improper Dismissal of RFC Opinion from Treating Physician Dr. Jackson

This Court is troubled by the fact that the ALJ appears to have dismissed Dr Jackson's RFC opinion based on mischaracterization of the evidence. Further, with the dismissal of the treating RFC, the

ALJ then relied upon the RFC of a non-examining Agency physician, as there were no other RFCs in the record.

"The ALJ should determine a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009) (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir.2006). Incorrect or imprecise evidence "cannot constitute substantial evidence to support an ALJ's decision." *See e.g. Hinchey v. Shalala,* 29 F.3d 428, 432 (8th Cir. 1994) ("Testimony based on hypothetical questions that do not encompass all relevant impairments cannot constitute substantial evidence to support the ALJ's decision.") Further, the ALJ is "not free to ignore medical evidence." *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) (ALJ's opinion did not discuss or discredit all diagnoses or limitations listed in medical records.)

Plaintiff has been seeing treating physician Dr. Jackson of Cooper Clinic since 2002. (Tr. 18, Pl's Br. at 9.) The first notation in the record concerning Plaintiff's back issues and leg numbness occur on June 2, 2004. He noted that he would order an MRI if the left foot numbness continued. (Tr. 248-49.) An MRI was taken on October 5, 2004. (Tr. 253.) Dr. Builterman of Cooper Clinic interpreted the results. He found advanced degenerative disc disease at L4-5 and L5-S1; degenerative joint disease involving the facets, L5-0S1; moderate broad central disc herniation at L5-S1, and mild to moderate neural foramen stenosis at L4-5 and L5-S1 associated with degenerative disc disease. (Tr. 253.)

Dr. Jackson referred Plaintiff to neurosurgeon Dr. Joseph Queeney of Cooper Clinic for surgical evaluation of chronic back pain and chronic pain in both lower extremities. Dr. Queeney examined Plaintiff on November 22, 2004. (Tr. 254.) His examination noted midline tenderness on the lower spine, and 0/4 for deep tendon patellar and achilles reflexes. He noted negative results for straight leg raise, stretch signs, and Patrick's test. He also noted that Plaintiff could ambulate with a normal tandem based gait and that strength and sensation to pinprick in the lower extremities was normal. Upon reviewing an

4

x-ray taken that day and the previous MRI, he made several observations, including retolisthesis or L5 on S1, vacuum disc phenomenon, "quite a bit of disc degeneration at L4-5 and L5-S1," modic and plate changes, and diffuse bulging at L4-5 and L5-S1. (Tr. 254.)

Dr. Queeney's impression was "1. Degenerative disc disease of the lumbar spine. 2 Lumbar spinal instability." (Tr. 255.) He also stated, "I certainly think he does have a reason to hurt and I think the discs are his primary pain generators." He recommended that all conservative measures be explored before they attempted surgery. (Tr. 255.)

An MRI on January 24, 2011 was interpreted by Dr. Brown of Cooper Clinic.(Tr. 250.) Dr. Brown reviewed a Lumbar MRI and found degenerative disc changes at L4-5 and L5-1. He also found a broad based disc bulge and spur to the right at L4-5 and mild canal stenosis at the 4-5 level and a disc bulge and spur to the left at L5-S-1. (Tr. 250.)

Dr. Jackson completed a Physical Medical Source Statement on September 6, 2011. (Tr. 290.) He opined that Plaintiff could sit/stand/walk for 15 minutes at a time in an 8-hour workday. He opined that the Plaintiff could not bend, squat, crawl, climb, crouch, or kneel. He opined that Plaintiff could stoop occasionally, and reach overhead frequently. He opined that Plaintiff would need to take unscheduled breaks, would need to lie down at unpredictable times, would need to elevate his feet periodically, and would need a sit/stand/walk option at will if employed. He opined that the Plaintiff's symptoms and pain would interfere with attention and concentration and would affect ability to tolerate work stress.

The ALJ discounted Dr. Jackson's RFC opinion in part because it was not supported by the objective medical evidence. Based on the exhibit citations and the date of the exam, the objective medical evidence cited by the ALJ was that of neurosurgeon Dr. Queeney. (Tr. 19.) The ALJ correctly noted that Dr. Queeney found "the claimant had a normal gait, and no lower extremity weakness." (Tr. 19.) However, the ALJ neglected to mention the additional findings of Dr. Queeney summarized above in this opinion, including the impression of degenerative disc disease and lumbar instability. Thus, the ALJ

mischaracterized evidence by ignoring a significant portion of Dr. Queeney's examination evidence and opinion. This requires a remand.

The dismissal of Dr. Jackson's RFC also left the record devoid of any RFCs except one from a non-examining Agency physician. This Court is also concerned as to the general accuracy of this assessment, given that Dr. Redd noted that the Plaintiff is a 57-year-old female. (Tr. 283.) *See e.g. Strongson v. Barnhart,* 361 F. 3d 1066, 1070 (8th Cir. 2004); *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000) (the ALJ should seek opinions from a claimant's treating physicians or from consultative examiners regarding the claimant's mental and physical RFC; *see also Davis v. Schweiker*, 671 F. 2d 1187 (8th Cir. 1982), *Taylor v. Bowen*, 805 F. 2d 329, 331 (8th Cir. 1986) and *Wildman v. Astrue*, 596 F.3d 959, 967 (8th Cir. 2010) (Opinions of non-examining physicians deserve little weight in the overall evaluation of disability.)

On remand, the ALJ is directed to obtain a Physical RFC Assessment from treating neurosurgeon Dr. Queeney or from a treating or consultative examining orthopedic specialist. This RFC Assessment may *not* take the form of a general summary of impressions and recommendations. Rather, it should *specifically* address issues related to the Plaintiff's ability to function in the workplace, such as the amount of weight that can be lifted and how often, the amount of time that can be spent sitting/standing/walking in an 8-hour workday, and the existence of any postural, manipulative, visual, communicative, environmental, or other limitations, as well as any work accommodation that might be needed.

### B. Step Four Analysis Not Sufficient

"An ALJ's decision that a claimant can return to his past work must be based on more than conclusory statements. The ALJ must specifically set forth the claimant's limitations, both physical and mental, and determine how those limitations affect the claimant's residual functional capacity."*Pfitzner v. Apfel*, 169 F.3d 566, 568 (8th Cir. 1999) (quoting *Groeper v. Sullivan*, 932 F.2d 1234, 1238-39 (8th Cir.1991). The Agency itself clearly sets out in SSR 82-62 that the ALJ's decision regarding the claimant's

ability to do PRW "must be developed and explained fully in the disability decision." SSR 82-62; *see also Sells v. Shalala*, 48 F.3d 1044, 1046 (8th Cir. 1995) "the ALJ has a duty to '*fully* investigate and make *explicit* findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant herself is capable of doing before he determines that she is able to perform her past relevant work.'" (quoting *Nimick v. Secretary of Health & Human Serv.*, 887 F.2d 864, 866 (8th Cir.1989) (emphasis in original)).

In this case, after identifying PRW of gas-leak inspector and pipeline construction inspector, the ALJ stated the following:

> The claimant has the above described past relevant work, which as identified by the vocational expert, are skilled positions each requiring light exertion. Assuming a hypothetical person with the claimant's residual functional capacity as assessed by the undersigned in this decision, the vocational expert testified that the hypothetical person would be able to perform the requirements of past relevant work. In comparing the functional capacity with the physical demands of this work, the undersigned finds that the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as generally performed.

(Tr. 19.) This was not only conclusory but also neglected to accurately reflect the full nature of the testimony that was given by the VE at the hearing. A close review of the record indicates that the VE did, indeed, testify that the DOT listed these two occupations as light and skilled. (Tr. 64.) However, the VE also testified that the Plaintiff performed the gas-leak inspector job at the medium exertional level, and the pipeline construction inspector at either the heavy or very heavy level. (Tr. 64-65.) The VE also testified about the postural limitaitons for the two positions. For the pipeline constuction position, DOT listed balancing and crawling were not present, while climbing, stooping, kneeling, and couching were occasional. For the gas leak inspector position, the DOT listed climbing, balancing, crouching, and crawling as not present, while stooping and kneeling were occasional. (Tr. 65.) This is in direct contrast to Plaintiff's testimony that he had to get in and out of ditches, and otherwise "just couldn't do the job like it needed to be done."(Tr. 46.) He testified that he was not able to stoop and bend, and that his

coworkers were helping him do his job for at least six months before he retired. (Tr. 46.) He testified that the inspector job required walking and stooping and bending. and traversing unlevel ground to lay the pipe, such as pastures and hills. (Tr. 57.) He also testified that the pain affected his mental ability, and he had made mistakes that were potentially life-threatening on the job. (Tr. 56.)

Further, the VE seemed concerned that the DOT information concerning the gas-leak inspector position was "very dated" and therefore no longer accurate, but was cut off by the ALJ in mid-sentence. (Tr. 66.)

None of these points of conflict were noted, explained, or in any way reconciled by the ALJ in his decision. Thus, the ALJ failed to fully investigate and make explicit findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant herself is capable of doing before finding that he could do past relevant work. Instead, the ALJ simply recited conclusory boiler-plate language. This requires a remand.

On remand, the ALJ is directed to fully investigate and make explicit findings as to the physical and mental demands of a claimant's past relevant work and to compare that with what the claimant herself is capable of doing before finding that he could do past relevant work. This should include appropriate input from the VE, including any concerns the VE might have about the validity of a DOT listing.

### C. Medication Side Effects Not Addressed to VE

Finally, this Court is concerned by the ALJ's failure to consider the effect of medication side effects and to include those side effects in hypotheticals to the VE.

The ALJ must properly consider the claimant's testimony regarding significant medication side effects. *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997). This requires an express examination of the dosage, effectiveness, and side effects of all medication. *Polaski*, 739 F. 2d at 1322. Failure to include medication side effects in the hypothetical to the VE, "at a minimum," requires the case to be remanded. *Mitchell v. Sullivan*, 925 F.2d 247, 250 (8th Cir. 1991).

8

Plaintiff testified that he takes Hydrocodone[2] and Meloxicam[3] for his pain. (Tr. 53.) He testified that Hydrocodone "makes me loopy," and prevents him from driving. (Tr. 53.) He testified that he does not take the Hydrocodone daily, only when he needs it. However, he agreed with the statement from the ALJ that the more he does, the more he has to take. (Tr. 54.) The ALJ did not include this information in his hypotheticals to the VE. This requires a remand.

On remand, the ALJ is directed to fully investigate any medication side effects that Plaintiff might suffer from, and to include those in the hypotheticals to the VE.

## IV. Conclusion

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 21st day of August 2014.

/s/ J. Marschewski
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[2] Vicodin and other brand name hydrocodone/acetaminophen pain medications are opioid analgesics indicated for relief of moderate to moderately severe pain. Side effects include acute liver failure, lightheadedness, dizziness, sedation, N/V. http://www.pdr.net/drug-summary/vicodin?druglabelid=33&id=627 (last accessed August 21, 2014).

[3] Meloxicam is an NSAID indicated for relief of osteoarthritis and rheumatoid arthritis. Side effects include Abdominal pain, diarrhea, dyspepsia, nausea, headache, anemia, arthralgia, insomnia, upper respiratory tract infection, urinary tract infection, dizziness, pain, pharyngitis, edema, influenza-like symptoms. http://www.pdr.net/drug-summary/mobic?druglabelid=1245&id=1610 (last accessed August 21, 2014).